## NORRIS & STEADLEY, Respondents, v. THE ST. JOSEPH & GRAND ISLAND RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, April 1, 1907.

1. **SALES: Delivery: Payment: Possession.** If goods are sold on credit with no time fixed for delivery, the vendee is entitled to the possession and the property vests in him at once; this rule however has no application if any condition precedent to the vesting of the vendee's title is required by the contract, such as a partial payment or securing of deferred payments.

2. ——: ——: **Rescission: Third Party.** Where the vendor notifies the purchaser that the sold goods has been injured and not fit for delivery and returns the first payment with notice of cancellation of the sale and the returned payment is accepted by the vendee, the contract is rescinded; and a subsequent delivery by the common carrier to the vendee and the latter's acceptance of the goods and offer to pay can in no way affect the vendor's rights.

3. **DAMAGES: Conversion: Common Carrier: Evidence.** A verdict for three hundred dollars for the conversion of a carriage and harness by a common carrier is under the evidence held not to be excessive.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

AFFIRMED.

*R. A. Brown* and *Willard P. Hall* for appellant.

(1) Morlan & Son were the owners of the carriage and harness at the time plaintiffs shipped same over defendant's road and at the time of the accident. The trial court erred in refusing to instruct the jury, as asked by defendant, that Morlan & Son were the owners of said property at the time of the accident. (2) Defendant properly delivered the carriage and harness to Morlan & Son because they were the legal owners thereof, and it is immaterial that plaintiffs shipped said property

to their own order.  5 Enc. of Law (2 Ed.), 196; Wolfe v. Railroad, 97 Mo. 473; Shellenberger v. Railroad, 45 Neb. 487, 63 N. W. 859.  (3)  The court erred in giving plaintiffs' instruction numbered 2 to the jury.  (4)  If plaintiffs were entitled to recover anything, it was only nominal damages.  (5)  The verdict of the jury was excessive.

*Ellison & Turpin* for respondents.

(1)  The plaintiffs, Norris-Steadley Carriage Company, were at all times the owners of the carriage and harness.  They have never parted with the title.  Benjamin on Sales, pp. 268, 269 (7 Ed.), p. 299; Benjamin on Sales (Ed. of 1888), p. 244 (7 Ed.), pp. 271, 272; State v. Winfield, 115 Mo. 437; Canton v. McDaniel, 188 Mo. 221; 2 Kent's Com. (14 Ed.), p. *497; Strauss Pritz & Co. v. Hirsch & Co., 63 Mo. App. 102; Matthews v. McElroy, 79 Mo. 202; Scharff v. Meyer, 133 Mo. 445. (2)  The verdict of the jury was not excessive.

BROADDUS, P. J.—This suit was commenced before a justice of the peace.  The plaintiffs seek to recover for the alleged conversion by defendant of a certain carriage and harness.  The plaintiffs under the firm name of the Norris-Steadley Carriage Company were engaged in the business of buying, manufacturing and selling carriages and harness at Kansas City.  In June, 1902, a member of the firm of Morlan & Son engaged in the transfer and storage business at Fairbury, Nebraska, went to Kansas City for the purpose of buying a carriage and harness and while there entered into the following written contract with plaintiffs for one of their carriages and a set of harness, to-wit:

"The Norris & Steadley Carriage Co.:
    "Please ship to us at Fairbury, Neb., as near the 1st day of July, 1902, as practicable, the following-de-

124 App.—2

scribed six seat for which we agree to pay, on arrival of said vehicle, in Fairbury, Nebraska, the sum of three hundred dollars, and the freight thereon, from Kansas City, Missouri, as follows: $35 cash with order,‹ $30 in cash on arrival of said vehicle, in Fairbury, Nebraska, and the balance in monthly notes of six $10 notes, eight $20 notes, one $15 note, each payable at the Harbine Bank, Fairbury, Nebraska, with eight per cent interest from date of arrival.

"We also agree to give as security for said notes a mortgage or trust deed on said vehicle for the sum of two hundred and thirty-five dollars, and we also agree to keep said vehicle insured and pay the premium thereon until the last payment becomes due, said policy of insurance to be issued in our name, with loss, if any, payable to Norris & Steadley Carriage Co., as its interest may appear.

"We hereby agree to purchase said vehicle on the terms and conditions as above stated, and it is expressly agreed and understood, in case this order is accepted, that the above contains the entire agreement in regard to and with reference to the sale and purchase of said vehicle." Then follows a description of the carriage concluding with these words: "Also one new set No. 230 double harness, brass trimmed, long tugged, 1½-inch trace." The contract was duplicated, one being signed by plaintiffs and the other by Morlan & Son. One of these writings was dated June 17, 1902, the other was not dated.

Morlan & Son failed to pay the sum of $35 cash as required by the contract at the time it was executed, but subsequently sent it to plaintiff, whereupon plaintiff on the 12th of July shipped the carriage and harness by defendant's railroad to Fairbury, Nebraska, to themselves as consignees. They sent bill of lading to their banker at Fairbury with the blank notes and mortgage with instructions to deliver to Morlan & Son the said bill

of lading when they made the other cash payment and executed the notes and mortgage. On the route the carriage and harness were injured in a wreck and they were returned to Kansas City, and plaintiffs notified of that fact. The plaintiff Norris examined the carriage and harness and stated that he had a conversation with defendant's agent, who said that everything would be satisfactorily settled and that he so wrote to Morlan & Son, at the same time explaining that the property had been seriously damaged while in transit. The letter itself was not produced and the witness stated its contents as follows, after stating what defendant's agent said: "And I went back and wrote Morlan & Son that the carriage was injured and damaged and that we could not deliver the carriage in the shape it should be delivered on account of this wreck; that it would have to be retrimmed and that the carriage was likely strained, and we sent the thirty-five dollars back again, which canceled the contract, and we agreed to duplicate the carriage, if they wanted it, sending them another carriage after they sent the money back, but they received the money and sent us an acknowledgment." He stated that the acknowledgment was in the shape of an endorsement by Morlan & Son on the back of the check for the $35 which plaintiffs sent to them. He stated that they got no letter from them after that time.

Before that time, however, plaintiff Norris saw the defendant's agent again at which time the latter offered him $25 to settle for the damage to the carriage, which he refused claiming that it would take one hundred and fifty dollars to thoroughly repair it. The defendant after plaintiffs had returned the $35 to Morlan & Son had the carriage repaired at an expense of $50 and paid Morlan & Son, who had made a claim against it for damages, $50 and delivered to them the carriage and harness. Whereupon Morlan & Son sent plaintiffs a check for $65 and the required number of notes in

payment for the property with a mortgage. Plaintiffs returned the check, notes and mortgage, demanded of defendant possession of the carriage and harness, which defendant was not able to produce. They then brought this suit. These are the main facts in the case. The judgment was for the plaintiff for the sum of $300, from which defendant appealed.

The defendant relies for reversal upon the proposition that under the contract between plaintiffs and Morlan & Son the latter were the owners of the property in controversy notwithstanding it was billed to the former as the consignees at Fairbury and that plaintiffs thereafter had no title to the same; therefore plaintiffs could not recover. As there is no dispute as to the facts, the question is purely one of law. We think that the plaintiffs were the owners of the goods. The principle of law upon which defendant relies is, if goods are sold upon credit, and nothing is agreed upon as to time of delivering the goods, the vendee is immediately entitled to the possession and the right of possession and the right of property vest at once in him. [Benjamin on Sales (Bennett's Notes), sec. 677; Newmark on Sales, 159.] This general rule of law of course would not apply if the contract of sale required the performance of any conditions precedent to the vendee's title to the goods. It was a part of the agreement that Morlan & Son should pay thirty-five dollars cash, thirty dollars upon delivery of the goods, and execute the notes and mortgage mentioned to secure the remainder of the purchase money. Before the goods were shipped Morlan & Son paid the $35. The contract does not specify when and where the notes and mortgages were to be executed, but the most reasonable inference is that they should be executed at Fairbury on their arrival there. And the only reasonable conclusion is that the goods were not to be delivered until the notes and mortgage were executed and the $30 paid, else after delivery it

would be optional with Morlan & Son to say whether
or not they would execute said notes and mortgage, to
say nothing about the payment of the $30. No reason-
able man under such circumstances would first turn over
his goods to a vendee on the condition that he would
subsequently reconvey or mortgage them to secure the
purchase price. The plaintiffs guarded against this con-
tingency.

Whether we are right in what has been said, the
judgment was proper for another reason, viz.: the goods
did not reach their destination until after the contract
of sale had been rescinded by the parties. When plain-
tiff notified Morlan & Son that the carriage had been
injured in a wreck and was not fit for delivery, and
returned to them the cash payment, and notified them
they canceled the sale and Morlan & Son received back
said cash payment, the sale was by mutual consent and
the acts of the parties canceled. The subsequent de-
livery of the goods to Morlan & Son by defendant and
the tender by them of the cash payment and the notes
and mortgage to plaintiff could not in any way affect the
rights of the plaintiff in the carriage and harness. As
a matter of law, on the conceded facts, plaintiffs were
entitled to recover.

From what has been said there could be no error,
as defendant contends there was, in the giving of plain-
tiffs' instruction upon their right to recover.

The amount of the verdict was $300, which defend-
ant contends is excessive. V. M. Spawr, plaintiffs' agent,
saw the carriage at Fairbury after it had got into the
possession of Morlan & Son and valued it at $150. He
did not see the harness. Elmer Morland testified that
the carriage was satisfactory to his firm when he re-
ceived it and that it seemed to be in as good condition
as it was when he purchased it, and that the harness
was not injured. This was all the evidence as to the
value of the property except we may consider the state-

ment of plaintiff Norris that it would take one hundred and fifty dollars to repair it, whereas only $50 was expended for that purpose, and to take also into consideration that defendant had it repaired and considered that it had been practically restored to as good a condition as it was before the wreck. Taking all this evidence into consideration, we are of the opinion that the verdict of the jury was not excessive.

Affirmed. All concur.